UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TIMOTHY CHARLES GENNINGS,

                                        Plaintiff,          Case # 18-CV-1235-FPG

v.                                                          DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

## INTRODUCTION

On May 12, 2010, Plaintiff Timothy Charles Gennings protectively applied for Disability

Insurance Benefits under Title II of the Social Security Act, alleging disability beginning July 9,

2009. Tr.[1] 1438-39; ECF Nos. 12-1 at 2, 13-1 at 2. After the Social Security Administration

("SSA") denied his claim, Plaintiff testified at a January 5, 2015 hearing before Administrative

Law Judge William M. Weir ("the ALJ"). Tr. 940-74. A supplemental hearing was later held to

hear testimony from two medical experts, Allan Levine, MD and Rita Clark, Ph.D. Tr. 975-1010.

On October 8, 2015, the ALJ issued an unfavorable decision. Tr. 1105-18. The Appeals Council

remanded Plaintiff's case back to the ALJ. Tr. 1127-31. On January 3, 2017, the ALJ held another

hearing and heard testimony from medical expert Jeffrey N. Hansen, MD. Tr. 1011-61.

On August 1, 2018, the ALJ issued a partially favorable decision, finding Plaintiff disabled

as of December 31, 2014. Tr. 2593-604. Plaintiff then appealed to this Court.[2] The parties make

competing motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c). ECF Nos. 12, 13. For the reasons that follow, the Commissioner's motion is GRANTED

and Plaintiff's motion is DENIED.

---

[1] "Tr." refers to the administrative record in this matter. ECF Nos. 5, 10.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

## LEGAL STANDARD

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)).

The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## DISCUSSION

In conducting the requisite five-step analysis,[3] the ALJ determined at step two that Plaintiff's severe impairments include degenerative joint disease of the hip, ankle, and knee. Tr. 2596. The ALJ specifically relied on medical expert Dr. Jeffrey N. Hansen's opinion, consultative examiner Donna Miller, DO's opinion, and numerous medical records in determining that Plaintiff became disabled as of December 31, 2014 due to his physical impairments. Tr. 2596-603. The ALJ's decision did not discuss whether Plaintiff's post traumatic stress disorder ("PTSD") was a severe impairment. Tr. 2596-604.

Plaintiff argues that remand is warranted because (1) the ALJ erroneously failed to evaluate several medical opinions from Veterans Affairs ("VA") doctors, and (2) the ALJ failed to evaluate Plaintiff's PTSD at step two of the five-step analysis. ECF No. 12-1 at 15-21. The Court finds no harmful error in the ALJ's decision.

---

[3] The ALJ uses this analysis to determine whether a claimant is disabled and therefore entitled to benefits. 20 C.F.R. § 404.1520(a)(4).

## I.      VA Medical Opinions

Plaintiff is a U.S. Army veteran who was medically discharged and received disability ratings for various impairments, including a 50% disability rating for PTSD. Tr. 946. VA medical professionals PA Michael Wing and Carol Jo Descutner, Ph.D., among others, provided opinions of Plaintiff's functioning. ECF No. 12-1 at 17-19; Tr. 291-99, 518-27, 528-35, 1791-806. Plaintiff alleges that the ALJ's failure to evaluate or weigh the opinions of PA Wing and Dr. Descutner constituted harmful error. The Court disagrees.

"[W]hile the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered." *Scott v. Berryhill*, 1:17-cv-00468-MA, 2018 WL 4442882, at *4 (W.D.N.Y. Sept. 17, 2018) (remanding where ALJ failed to provide a rationale for weight afforded to a VA physician's assistant's opinion) (quotation and citation omitted). Here, the ALJ stated only that he gave "little weight to numerous VA opinions" because "the standards for disability for the VA and for the Social Security Administration differ significantly." Tr. 2604.

First, the ALJ did ostensibly consider the VA medical opinions, but gave them little weight. Second, the ALJ's failure to engage in any further analysis of the VA medical opinions is ultimately harmless because those opinions are not supported by substantial evidence in the record. *See, e.g.*, *Sena v. Berryhill*, No. 3:17-cv-912 (MPS), 2018 WL 3854771, at *6 (D. Conn. Aug. 14, 2018) (affirming ALJ's decision that "stated that he considered the VA's determination but gave it little weight" because it was supported by substantial evidence); *Camino v. Colvin*, No. 1:13–CV–00626 (MAT), 2015 WL 5179406, at *6 (W.D.N.Y. Sept. 4, 2015) (finding harmless error where ALJ did not explicitly consider medical opinion because it would not have changed the outcome of the decision, which was supported by substantial evidence); *Arguinzoni v. Astrue*, No. 08–CV–6356T, 2009 WL 1765252, at *9 (W.D.N.Y. June 22, 2009) (finding harmless error where

ALJ did not assign specific weight to medical opinions because decision was supported by substantial evidence) (collecting cases).

PA Wing stated in a March 6, 2011 opinion that Plaintiff's physical condition caused decreased concentration and mobility, problems with carrying and lifting, and difficulty reaching. Tr. 527. He rated the effects of Plaintiff's physical impairments on his activities of daily living as "mild," "moderate," or "severe." *Id.* According to the SSA's regulations, as a physician's assistant, PA Wing is not considered an "acceptable medical source." *Drollette v. Colvin*, No. 8:13-CV-0280 (GTS/CFH), 2014 WL 2880022, at *5 (N.D.N.Y. June 23, 2014) ("[P]hysician assistants are considered 'other sources' rather than 'medical sources' . . . . The ALJ 'has the discretion to determine the appropriate weight to accord the other source's opinion based on the evidence before him.'" (quoting *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995)). Thus, PA Wing's opinion was not due any particular weight.

Furthermore, PA Wing's opinion, without a specific breakdown of Plaintiff's limitations as they pertain to his ability to work, is too vague to be entitled to much weight. *See, e.g.*, *Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) (ALJ committed harmful error by assigning any weight to doctor's opinion that was "vague insofar as [it] [did] not provide a function-by-function assessment of the claimant's capabilities and limitations." (internal quotation and citation to record omitted)); *Anderson v. Colvin*, No. 5:12–cv–1008 (GLS/ESH), 2013 WL 5939665, at *8-9 (N.D.N.Y. Nov. 5, 2013) (Doctor's opinion was too vague to be relied upon in RFC because it used "indeterminate descriptors such as 'mild,' 'moderate' and 'marked' when expressing [plaintiff's] limitations with respect to physical activities . . . ."). This is particularly so given that PA Wing's opinion is contradicted by other evidence in the record, such as Plaintiff's own testimony as to his functional

abilities.  *See, e.g.*, Tr. 959, 962, 964, 965.  Thus, it was harmless error for the ALJ not to assign weight to PA Wing's opinion.

Dr. Descutner's opinion is also contradicted by substantial evidence in the record.  In a July 3, 2012 one-time assessment in connection with Plaintiff's application for VA benefits, Dr. Descutner opined that Plaintiff had PTSD that resulted in an "[o]ccupational and social impairment with reduced reliability and productivity."  Tr. 1795.  She also observed that his PTSD symptoms included a marked lack of interest in significant activities, avoiding social interactions, and hypervigilance.  Tr. 1798.  It was Dr. Descutner's opinion that "[Plaintiff's] PTSD symptoms . . . cause[d] clinically significant distress or impairment in social, occupational, or other important areas of functioning," and would negatively impact his work-related abilities, as well as his interpersonal relationships.  Tr. 1799, 1803-04.

Dr. Descutner's opinion differs dramatically from the numerous treatment notes of Plaintiff's treating psychologist Gregory Clark, LCSW.[4]  LCSW Clark's treatment notes indicate that he treated Plaintiff regularly from October 4, 2010 until March 21, 2013.  Tr. 568, 1728.  LCSW Clark consistently diagnosed Plaintiff with PTSD during that time.  However, despite Plaintiff's diagnosis, LCSW Clark noted a gradual, but ultimately full, improvement in Plaintiff's PTSD symptoms to the point where he no longer diagnosed Plaintiff with PTSD.  For example, whereas initially Plaintiff had significant school, financial, and personal stressors, and avoided social interactions, his symptoms gradually improved to the point where he was able to form relationships, have social interactions, and discuss, manage, and process his stressors well.  Tr. 496-97, 497-98, 504-05, 511-12, 557-58, 559-60, 568-69, 646-48.

_____

[4] Although LCSWs are considered "other sources" under the SSA's regulations, their opinions "should be evaluated on key issues such as impairment severity and functional effects . . . ."  *Rizzo v. Berryhill*, No. 16 Civ. 4898 (CS) (PED), 2017 WL 3578701, at *18 (S.D.N.Y. Aug. 17, 2017).  This is particularly so when LCSWs have a long and frequent treating history with the plaintiff, their opinions are consistent with other substantial evidence, and they present relevant evidence to support their opinions.  *Id.*

Notably, around the time of Dr. Descutner's July 3, 2012 assessment, and following a steady improvement in Plaintiff's PTSD symptoms, LCSW Clark's treatment notes indicate that though Plaintiff discussed his traumatic experiences in the military and there are "many things that are still difficult for him," Plaintiff "does not have [PTSD] symptoms that are acute." Tr. 898-99. In the months following Dr. Descutner's assessment, LCSW Clark no longer diagnosed Plaintiff with PTSD (Tr. 1728-29, 1786, 1789), and Plaintiff was generally coping well with life stressors and his physical impairments (*see, e.g.*, Tr. 497-98, 504-05, 514-15, 645-46, 646-48, 898-99, 1728-29, 1730-31, 1769-70), things he had difficulty with at the beginning of his treatment with LCSW Clark (*see, e.g.*, Tr. 529, 533-34, 557-58). Throughout his treatment with LCSW Clark, Plaintiff had consistently normal psychological examinations and was regularly assessed as doing "fairly well." Tr. 645-48, 480-82, 485, 492, 493-94, 495-96, 497-98, 501-02, 504-05, 506, 510-11, 514-15, 662-63, 674-75, 725-26, 806-07, 898-99.

LCSW Clark opined at various points in Plaintiff's treatment that Plaintiff "appear[ed] as though he could work and manage minor stressful situations" (Tr. 497-98); was "managing his emotions quite well" (Tr. 499); was "in control of his mood" with no recent setbacks (Tr. 504-05); "continue[d] to do well and process[] his stressors" (Tr. 510-511); "appear[ed] to be very stable" (Tr. 514-15); and reported dealing with some stress in his life but managing it well (Tr. 1728-29, 1769-70).

Plaintiff also underwent two psychological consultative examinations which support LCSW Clark's findings and contradict Dr. Descutner's assessment. Specifically, Susan Santarpia, Ph.D. completed a 2010 assessment in which she did not diagnose Plaintiff with PTSD and opined that the results of Plaintiff's evaluation "do not appear to be consistent with any psychiatric problems that would significantly interfere with the claimant's ability to function on a daily basis." Tr. 425. Gregory Fabiano, Ph.D. opined in his 2014 assessment that Plaintiff had a mild limitation

in dealing with stress, but that while the "[r]esults of the examination appear to be consistent with psychiatric problems," it "does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." Tr. 1918. Similarly to Dr. Santarpia, Dr. Fabiano did not diagnose Plaintiff with PTSD but recommended follow-up therapy to help Plaintiff manage his anxiety symptoms. Tr. 1918.

It is abundantly clear from the record that Dr. Descutner's one-time assessment is not worthy of weight. Therefore, the ALJ's failure to weight Dr. Descutner's opinion is harmless error. *See Martinez Reyes v. Comm'r of Soc. Sec.*, 18-CV-0394-MJR, 2019 WL 3369255, at *7 (W.D.N.Y. July 26, 2019) (finding harmless error where ALJ did not account for plaintiff's PTSD in RFC given that medical records showed PTSD stabilizing, psychiatric exams were normal, and substantial evidence supported ALJ's determination).

## II.     Step Two Severity Analysis of Plaintiff's PTSD

At step two of the disability analysis, an ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement . . . and significantly limits the claimant's ability to do basic work activities." *Williams v. Berryhill*, No. 16-CV-00807-LGF, 2018 WL 4501062, at *3 (W.D.N.Y. Sept. 20, 2018) (citations and quotation marks omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1521. An impairment is nonsevere if the medical evidence establishes a slight abnormality that would only minimally affect the claimant's ability to work. *Perez v. Astrue*, 907 F. Supp. 2d 266, 271 (N.D.N.Y. 2012).

Plaintiff contends it was harmful error not to evaluate and find Plaintiff's PTSD severe at step two of the five-step analysis. The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Critoph v. Berryhill*, No. 1:16-CV-00417 (MAT), 2017 WL 4324688, at *3 (W.D.N.Y. Sept. 28, 2017) (internal quotations and citation omitted). As discussed

above, LCSW Clark's treatment notes and the evaluations of two consultative examiners indicate that Plaintiff's PTSD would only minimally affect his ability to work, and therefore was not a severe impairment. Despite receiving a PTSD diagnosis in 2010, throughout his treatment, Plaintiff's PTSD symptoms consistently improved to the point of overcoming the diagnosis altogether, and Plaintiff frequently failed to mention any symptoms related to PTSD at all during his psychotherapy sessions. Tr. 491, 493, 495, 497-98, 514-15, 645-46, 1728-29, 1786, 1789. Furthermore, Plaintiff consistently indicated that his physical impairments, rather than his PTSD, were his main issues, which the ALJ considered to find Plaintiff disabled. Tr. 445, 491, 504-05, 809-10. Thus, the ALJ's failure to discuss PTSD as a severe impairment is ultimately harmless error.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED, and this matter is DISMISSED WITH PREJUDICE. The Clerk of Court is instructed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 14, 2020
      Rochester, New York

                                    _____
                                    HON. FRANK P. GERACI, JR.
                                    Chief Judge
                                    United States District Court